## Case No. 8,167.

### LEAVIT v. The SHAKESPEARE.

[3 Chi. Leg. News, 156; 13 Int. Rev. Rec. 87.]

District Court, D. Louisiana. 1871.

INTERNATIONAL LAW — THE RIGHTS OF CONSULS— TREATY WITH HANSEATIC LEAGUE — ADMIRALTY JURISDICTION OVER SEAMEN'S WAGES UNDER TREATY.

[The convention of April 30, 1852, between the United States and the Hanseatic League, does not preclude a citizen of the United States, who has served as a seaman on board of a vessel belonging to one of the Hanse towns, from bringing his action for wages for such service, in the admiralty courts of the United States.]

In admiralty.

DURELL, District Judge. Alfred Leavit and others against the ship Shakespeare. The libel sets forth that Leavit, with four others, all citizens of the United States, did, on or about the fifteenth day of August, 1870, ship and hire themselves to serve as mariners on board the Bremen ship Shakespeare, for a voyage from New Port, Wales, to Lafronella, in New Granada, and thence to and ending at the port of New Orleans; that said ship proceeded upon said voyage with libellants on board, at certain specified wages, and did complete the same at the port of New Orleans, on or about the 16th day of December, 1870; that the term for which said libellants had agreed to serve having expired, they, the libellants left said ship, and demanded the wages due them, which wages were by the captain of said ship refused to be paid, etc. In opposition to further proceeding in the case, the captain of said ship Shakespeare and the consul of the North German Union at New Orleans have put on file a plea to the jurisdiction of the court, which plea is based upon article first of a convention made between the United States of America and the free and Hanseatic Republics of Hamburg, Bremen, and Lubeck, the 30th day of April,

1852. Said article is as follows: "Article 1. The consuls, vice-consuls, commercial and vice-commercial agents of each of the high contracting parties shall have the right as such to sit as judges and arbitrators in such differences as may arise between the masters and crews of vessels belonging to the nations whose interests are committed to their charge, without the interference of the local authorities, unless the conduct of the crews or of the master should disturb the order or tranquillity of the country, or the said consuls, vice-consuls, commercial agents or vice-commercial agents should require their assistance in executing or supporting their own decisions; but this species of judgment or arbitration shall not deprive the contending parties of the right they have to resort on their return to the judicial authority of their own country." The plea to the jurisdiction of the court, like a demurrer, admits the truth of the allegations contained in the libel, to-wit: That the libellants are citizens of the United States; that the voyage was as stated; that the voyage ended at New Orleans; and that the libellants earned wages as mariners, serving on board of the Shakespeare during the whole of said voyage. Now the court has come to the conclusion that the differences spoken of in the article cited from the treaty of April 30, 1852, and which are made subject to the judgment and arbitration of consuls, vice-consuls, commercial and vice-commercial agents, are differences of such a nature as might possibly, if aggravated, disturb the order and tranquillity of the country—differences which touch the discipline of the ship. Certainly, the naked question of whether wages are due or not due, is not a difference which can disturb either the order or the tranquillity of the country. Again the court does not consider it to have been the intention of the United States in making the treaty of April 30, 1852, to subject its citizens in a question of wages claimed or earned on board of a foreign ship, to the judgment or arbitration of a foreign consul or commercial agent; and this opinion of the court is supported by the last clause of the article cited, to wit: "But this species of judgment or arbitration shall not deprive the contending parties of the right they have to resort on their return to the judicial authority of their own country." This clause contemplates the return of the complaining mariner to his own country, where he may appeal from the adverse decision given by his consul at a foreign port; thus evidently restraining the application of the provisions of the article to such of the mariners as are subjects or citizens of the country whose flag their ship bears. In the case before the court, the libellants are citizens of the United States. They are already at home, and they have a right to resort to the judicial authority of their own country. Let the plea be overruled and dismissed.